MOORINGSPORT OIL CO. v. ALDRIDGE et al. (No. 8509.)

(Court of Civil Appeals of Texas. Ft. Worth. Jan. 27, 1917. On Motion for Rehearing March 3, 1917.)

1. BROKERS ⊛⟾88(1) — SALE OF STOCK — ACTION FOR COMPENSATION — SUBMISSION OF SPECIAL ISSUES.

In suit for commissions for selling stock in defendant company, where the evidence showed that stock issued in lieu of stock owned by the president was traded by him for a lot, it was error to refuse to submit special issue of whether the stock belonged to the president or to the company, since, if it belonged to the president, plaintiff would have no right to recover commissions from the company, and the submission of the issue of whether "the trade" was finally made between the purchaser and the president personally, or as agent for the company, did not cure the error.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 128, 129.]

2. CORPORATIONS ⊛⟾139 — ISSUE OF STOCK CERTIFICATE—EVIDENCE OF OWNERSHIP.

The mere fact that a certificate of stock was signed by the president and secretary did not prove that it was then owned by the company instead of by the president individually as alleged.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 467, 469.]

3. CORPORATIONS ⊛⟾300 — LIABILITY FOR PRESIDENT'S ACT.

Acts of the president of a corporation beyond the objects of the corporation and without the scope of his authority cannot bind the corporation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1320–1323.]

4. BROKERS ⊛⟾86(6)—SALE OF STOCK—ACTION FOR COMPENSATION — SUFFICIENCY OF EVIDENCE.

Evidence showing that stock issued in lieu of stock owned by the president was traded by him for a lot held insufficient to bind the corporation to pay a broker's commission for negotiating the trade, although the president might be personally liable.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 117.]

Appeal from Johnson County Court; B. J. Jackson, Judge.

Suit in justice court by J. N. Aldridge and others against the Mooringsport Oil Company. Judgment for plaintiffs, and defendant appealed to the county court, where on

trial de novo plaintiffs had judgment, and defendant appeals. Reversed and remanded.

Walker & Baker, of Cleburne, for appellant. Johnson & Harrell, of Cleburne, for appellees.

CONNER, C. J. This suit was instituted in a justice court of Johnson county by J. N. Aldridge and others to recover $200 commission upon an alleged sale of stock belonging to the company to one F. H. Barlow. The suit was founded upon the following letter which was declared upon:

"Ft. Worth, Texas, February 7, 1914.

"Mr. J. N. Aldridge, Cleburne, Texas—Dear Sir: This is to advise that we will in future pay you 20 per cent. commission where you collect not less than 50 per cent. in cash with the sale, and 15 per cent. when you collect less than 50 per cent.

"We feel that the above commission is exceedingly liberal.

"We have instructed our vice president, Mr. Hardy, to have the timbers gotten out for the derrick. This he will do at once.

"Yours very truly,

"E. R. Mooring, President."

It was alleged, in substance, that by virtue of the terms of this letter J. N. Aldridge and another associated with him sold stock in the Mooringsport Oil Company to said Barlow of the value of $1,000, and prayer was for the recovery of the 20 per cent. commission authorized by the contract.

Appellant pleaded the general denial, and specially, among other things, that the transaction was not a sale of stock, but an exchange of property for stock made by E. R. Mooring in person and in which he traded his individual stock to Barlow for a lot in Cleburne.

The trial in the justice court resulted in a judgment in favor of the plaintiffs in the suit, and upon an appeal to the county court in a de novo trial they again recovered a like judgment, from which the appellant company has appealed.

Pretermitting a discussion of evidence and questions deemed not material, it will be sufficient to state, we think, that the uncontradicted evidence shows that after some negotiations initiated by the appellee Aldridge and his associate, E. R. Mooring, president of the appellant company, closed a contract with Barlow, whereby Barlow acquired $1,-000 of stock in the appellant company in exchange for a certain lot situated in the town of Cleburne, Mooring, in addition to the $1,-000 of stock forming a part of the consideration, further agreeing to assume an indebtedness of $1,500 constituting a charge against the lot.

The case was submitted to a jury upon special issues, and the jury found that Aldridge and his associate were agents for the appellant company and were the procuring cause of the trade that was finally made, whereby Barlow became the owner of the 50 shares of stock in the Mooringsport Oil Com-

193 S.W.—26

pany. The following further issue was submitted:

"(3) Was the trade as finally made one between F. H. Barlow and E. R. Mooring personally, or between F. H. Barlow and E. R. Mooring as the agent and manager of the Mooringsport Oil Company for such company?"

To which question the jury answered:

"As agent and manager for said oil company."

[1] Appellant requested the submission of the following further special issue, which was refused by the court, and to which action on the part of the court error has been duly assigned, viz.:

"Were the 50 shares of stock acquired by Barlow the property of E. R. Mooring or of the Mooringsport Oil Company?"

We are of the opinion that this issue was material, and that the court erred in refusing to submit it. Appellees insist, in substance, that the answer of the jury to the third special issue submitted by the court, and which we have above set out, sufficiently comprehends the issue embodied in the special instruction requested, but we do not feel quite prepared under the evidence to concur in this contention. E. R. Mooring, the president of the appellant company, and J. J. Nunnally, who testified that he was the secretary and treasurer of said company at the time of the exchange under consideration, testified in relation to the transfer of stock substantially to the effect that the certificate of stock issued to Barlow was No. 211; that it had been issued in lieu of certificate No. L9, previously issued to and owned by Mooring; that at the time of the issuance of certificate No. 211 Mooring came to said secretary and submitted certificate No. L9 and requested the issuance in lieu thereof of certificate No. 211, which was done. The secretary in testifying exhibited the stubs of the certificates which showed the issuance of certificate No. L9 for 50 shares direct to Mooring on July 15, 1913, and the exchange in question occurred and certificate No. 211 was issued to Barlow on March 5, 1914. The book further showed, as testified to by the secretary, that certificate No. L9 had been canceled on March 16, 1914, by himself as secretary and treasurer. The secretary further in testifying gave an explanation of how it occurred that the cancellation of certificate No. L9 appeared on the books to have been made some days later than the issuance of certificate No. 211, but the explanation is not thought at this time to be material, and we need not cite the evidence. The secretary further testified, however, specifically that:

"The Mooringsport Oil Company had not a cent's interest in this 50 shares of stock in question which were issued to F. H. Barlow. The stock belonged to E. R. Mooring individually."

Mooring testified, among other things:

That he told Aldridge and his associate at the time that "I couldn't make that trade with Barlow; that I couldn't sell him stock in which the company was interested, because in that case I would be required to pay the money—a certain amount of it—for developing purposes; that,

if I made the deal, I would have to let Mr. Barlow have some of my own individual stock so that I would not be required to pay any money. * * * I afterwards made the deal with Mr. Barlow. * * * I suppose it was about a week or ten days or two weeks from the telephone conversation I had with Mr. Barlow until this trade was made with him. * * * I was familiar with certificate No. L9, and also with certificate No. 211. Certificate L9 was for 50 shares of my own individual stock in which the Mooringsport Oil Company was not interested at all. It was my individual property. *' * * Certificate No. L9 for 50 shares owned by me was canceled and reissued to F. H. Barlow as certificate No. 211."

Mooring further testified to the effect that he was manager of the company, and as such had authority to make contracts for the sale of the company's stock and fix the terms of such sales, and in fact "had authority to make any and all contracts that I deemed necessary for the interest of the company's business."

It further appeared that Barlow, in making the exchange, conveyed the lot in Cleburne to Mooring direct, and not to the appellant company, and there is certainly no direct contradiction of the testimony of Mooring, the president, and Nunnally, the secretary, to the effect that it was the individual stock of Mooring that was conveyed to Barlow, nor is it insisted that the method adopted in the issuance of stock certificate No. 211 acquired by Barlow was not the proper method of transferring the stock of an individual stockholder.

[2] The mere fact, therefore, that certificate No. 211 for the 50 shares of stock acquired by Barlow was signed by Mooring as president of the company and Nunnally as secretary did not prove that the stock was that owned by the company instead of stock owned individually by Mooring, although doubtless this fact was made the basis of the jury's finding to the third special issue submitted by the court that the trade as finally made was between F. H. Barlow and E. R. Mooring, as the agent and manager of the Mooringsport Oil Company for the company. The appellant, therefore, under the circumstances, we think, was at least clearly entitled to have a specific finding upon the specific issue requested of whether the 50 shares of stock acquired by Barlow was the property of E. R. Mooring or of the Mooringsport Oil Company; for, if the stock actually acquired by Barlow was the individual property of Mooring and conveyed to Barlow in a transaction whereby Mooring individually acquired real estate and assumed a personal obligation, then it seems too plain for argument or citation of authority that the appellees would not be entitled upon the written contract declared upon to recover commissions.

[3, 4] The charter of the company was not in evidence, and the authority of Mooring as the president and manager other than we have stated was not shown. Mooring was but an agent of the corporation, and an act on his part beyond the purposes and objects of the corporation and without the scope of his authority would have no binding force whatever upon the corporation. And it seems clear to us that without other and further authority than has been shown the appellant company a corporation cannot be held bound to pay commissions for an exchange of property made by its president for his individual benefit. The president himself might be liable under a quantum meruit for the value of such services, if any, as appellees rendered in making the exchange, but by no principle of law that we know of can the corporation be made liable to pay for services thus rendered.

It is accordingly ordered that the judgment be reversed, and the cause remanded for a new trial.

### On Motion for Rehearing.

We have carefully considered the appellees' motion for rehearing and read with interest the able argument of appellees' counsel in support of the motion, but we yet think the judgment should be reversed, and the cause remanded for a new trial. It is to be remembered that this is not a suit on the part of the Mooringsport Oil Company to establish a trust and seek to avail itself of the benefits, if any, of the trade by its president, but a suit on the part of the appellees against the company to recover commissions upon an alleged sale of stock owned by the company and for its benefit, and while there may seem to be force in appellees' present contention that the fact that the stock actually conveyed to Barlow is in its nature evidentiary rather than vital as an issue, yet under the circumstances of this case we think appellant was entitled to a specific finding upon any controverted issue that would tend to make more certain its defense that its president was acting in his own interest and for his own benefit alone. This seems particularly true in view of the fact that the stock actually transferred to Barlow was stock issued by the president and secretary in the name of the company. The jury might readily therefrom find, as they did, that the trade as finally made was by Mooring as agent and manager of said oil company. It may be furthermore said that it can hardly be contended with reason that, by virtue of its charter or otherwise, does the record disclose a power in the president of the corporation to make a contract for the company, and bind it as a trading corporation to purchase real estate and assume the payment of debts operating as a lien thereon.

We conclude on the whole that the motion for rehearing should be overruled; and it is so ordered.